IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS UNITED HOUSING PROGRAM, | § | |
| INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-977-L |
| | § | |
| WOLVERINE MORTGAGE PARTNER | § | |
| RETIREMENT, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Defendants Wolverine Mortgage Partner Retirement ("Wolverine"), Martin Lehman ("Lehman"), Wet Leaves LLC ("Wet Leaves"), Palmer & Manuel LLP ("Palmer & Manuel"), Carol A. Rogers Solo 401 K. Trustee ("Rogers"), and Equity Trust Company ("Equity Trust"; collectively with all other defendants, "Defendants") have filed a Motion to Refer Case to Bankruptcy Court [Dkt. No. 7] and a Motion to Dismiss Claims Under Rule 12(b) [Dkt. No. 9].

United States District Judge Sam A. Lindsay has referred these motions to the undersigned United States magistrate judge for findings and recommendations. *See* Dkt. No. 12.

Plaintiff Texas United Housing Program, Inc. ("TX United") has filed a response to Defendants' Motion to Refer Case to Bankruptcy Court, *see* Dkt. No. 10, and Defendants filed a reply, *see* Dkt. No. 11.

-1-

TX United did not file a response to Defendants' Motion to Dismiss Claims Under Rule 12(b) [Dkt. No. 9], and the deadline to do so has passed. *See* N.D. TEX. L. CIV. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed.").

The undersigned now concludes that Defendants' Motion to Refer Case to Bankruptcy Court [Dkt. No. 7] should be granted and Defendants' Motion to Dismiss Claims Under Rule 12(b) [Dkt. No. 9] should be referred to the Bankruptcy Court.

## Background

TX United executed Notes and Deeds of Trust to purchase three different properties (described separately as "Property I," "Property II," and "Property III" and collectively as the "Properties").

The Notes and Deeds of Trust corresponding to the Properties have changed hands multiple times. Wolverine and Rogers appear to currently hold the Note and Deed of Trust for Property I and Property II. And, after purchasing it from Equity Trust at a Trustee's Sale, Wet Leaves appears to hold the Note and Deed of Trust to Property III.

Defendants initiated foreclosure sales as to each of the Properties.

TX United then filed this lawsuit. It brings claims against one or more Defendants for violation of the Fair Housing Act ("FHA"), wrongful foreclosure, quiet title, breach of contract, and trespass to try title. It also brings negligence claims against Palmer & Manuel.

TX United argues that the foreclosures on the Properties are invalid because

Defendants do not have standing to enforce the Note and failed to follow various procedures that the parties' contracts and federal and state law require them to follow. TX United also contends that Defendants systematically discriminated against it because its clients consist of people of color and others who are part of a protected class. *See* Dkt. No. 1 at 5-6.

Defendants filed their Motion to Refer Case to Bankruptcy Court shortly thereafter. They note that the Northern District of Texas has adopted a Standing Order of Reference that requires cases under title 11 and proceedings arising under title 11 or arising in or related to a case under title 11 to be referred to the bankruptcy court. *See id.* at 8. And they conclude that, under that Standing Order of Reference, this case should be referred to the Bankruptcy Court because it relates to TX United's bankruptcy case, *In re TXS United Housing Program, Inc.*, No. 14-34854-hdh11 (Bankr. N.D. Tex.) (the "Bankruptcy Case").

In the Bankruptcy Case, the Bankruptcy Court confirmed a Chapter 11 bankruptcy plan (the "Bankruptcy Plan") that requires TX United to make periodic payments on the debts it incurred in connection with the Properties. *See* Bankruptcy Case, Dkt. No. 171 & Ex. A at 20-27. The Bankruptcy Plan specifically directs TX United to make these payments to Don H. Konipol, Wolverine's trustee; Carol Rogers, as trustee of Carol A Rogers Solo 401K Trust; and Mitchell W. Vicknair, Equity's custodian (collectively, the "Creditor Defendants"). *See* Bankruptcy Case, Dkt. No. 171, Ex. A at 20-27.

Shortly after the Bankruptcy Plan's confirmation, the Bankruptcy Court found that TX United had defaulted on obligations to make these payments and that the Creditor Defendants "may foreclose on each of the subject properties in September" 2016 – foreclosures that are at issue here. Bankruptcy Case, Dkt. No. 274.

Defendants have since also filed a Motion to Dismiss Claims Under Rule 12(b). *See* Dkt. No. 9. They argue that, in light of the Bankruptcy Case, TX United is barred from bringing several of the claims in this action under the doctrine of res judicata, collateral estoppel, or both. They also argue that TX United does not have standing to bring its FHA claim because the FHA does not apply to commercial properties, which are purportedly at issue here.

TX United disputes Defendants' assertion that this case is an attempt to attack the Bankruptcy Court's decisions. It contends that "the Orders by the Bankruptcy Court are," in fact, "evidence of the discriminatory conduct alleged by the Plaintiff against the Defendants." Dkt. No. 10 at 2. It also appears to contend that it would be more judicially efficient to keep this case in this Court. TX United explains that, if the case is referred to the Bankruptcy Court, it "will seek to withdraw the proceedings from said court." *Id.* It further argues that Defendants have lost the right to ask for the Bankruptcy Court to hear their claims because Defendants filed a motion for relief of stay in the Bankruptcy Case.

The undersigned concludes that the Court should refer this case to the Bankruptcy Court, including Defendants' pending Motion to Dismiss Claims Under Rule 12(b) [Dkt. No. 9].

## Legal Standards

Defendants argue that this case should be referred to the Bankruptcy Court under a standing order adopted by this district, namely Miscellaneous Order No. 33.

Miscellaneous Order No. 33 provides that "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 ... are [to be] referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law." *See* Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1983) (citing Section 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. § 157 as authority to so order).

"Significantly, such a blanket order of reference does not preclude a district court from exercising its jurisdiction pursuant to 28 U.S.C. § 1334." *U.S. v. Miller*, No. 5:02-cv-168-C, 2003 WL 23109906, at *4 (N.D. Tex. Dec. 22, 2003) (citing *Carlton v. BAWW, Inc.*, 751 F.2d 781, 788 (5th Cir. 1985)).

In particular, 28 U.S.C. § 157(d) provides that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). It also provides that a district court "may" withdraw, "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *Id.* § 157(d).

These provisions apply "even where the district court allows a case to proceed under its jurisdiction that it otherwise would have referred to the bankruptcy court under a blanket order of reference." *Miller*, 2003 WL 23109906, at *4 (citing *Carlton*, 751 F.2d at 788).

When a party contends that a proceeding should have been referred to the Bankruptcy Court under Miscellaneous Order No. 33, the Court should refer that case if two conditions are met: (1) the proceeding is one that the Court would, indeed, normally refer to the bankruptcy court under Miscellaneous Order No. 33; and (2) the Court would be unlikely to withdraw the reference in any event – either, permissively, for cause, or because the opposing party could and would file a timely motion that would require withdrawal. *See* 28 U.S.C. § 157(d).

To make this determination, in light of Defendants' arguments and the complicated jurisdictional issues that arise, the undersigned takes judicial notice of the following documents from the Bankruptcy Case, *In re TXS United Housing Program, Inc.*, No. 14-34854-hdh11 (Bankr. N.D. Tex.):

- Motion for Relief from Automatic Stay, Dkt. No. 57;

- Agreed Order on Konipol/ Pearson/ Equity Trust's Motion for Relief from Automatic Stay, Dkt. No. 80;

- Order Confirming Plan with Plan attached, Dkt. No. 171;

- Konipol et al Notice of Default (and intent to accelerate), Dkt. No. 266;

- TX United's Notice of Dispute of Alleged Default, Dkt. No. 267; and

- Order on Konipol et al's Notice of Default, Dkt. No. 274.

*See Muhametaj v. Performance Food Group, Inc.*, No. 4:16-cv-217-O, 2016 WL 5845849, at *2 (N.D. Tex. Sept. 16, 2016) (referring to the Court's decision to withdraw a reference made to the Bankruptcy Court as a decision as to whether or not to "exercis[e] its jurisdiction"); *Wiliamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("Jurisdictional issues are for the court ... to decide, whether they hinge on legal or factual determinations.").

## Analysis

I.    The Court would normally refer this case to the Bankruptcy Court under Miscellaneous Order No. 33 as a "related case."

Defendants argue that the Court would ordinarily refer this case to the Bankruptcy Court under Miscellaneous Order No. 33. The undersigned agrees.

Miscellaneous Order No. 33 directs courts in the Northern District of Texas to refer four types of bankruptcy matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.

"The first category refers to the bankruptcy petition itself. The second, third, and fourth categories ... 'operate conjunctively to define the scope jurisdiction.'" *See In re U.S. Brass Corp.*, 301 F.3d 296, 303-04 (5th Cir. 2002) (quoting *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987); making these comments in the context of very similar text in 28 U.S.C. § 1334(b)). As a result, to determine whether the Court would normally refer this case under Miscellaneous Order No. 33, "'it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'" *Id.* (footnote omitted; quoting *In re*

*Wood*, 825 F.2d at 92).

Courts consider the current state of the bankruptcy case in determining whether a proceeding relates to that case.

"Prior to confirmation of the bankruptcy plan," a proceeding relates to the bankruptcy case "when 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Systems, LLC*, 556 B.R. 815, 828 (W.D. Tex. 2017) (quoting *In re Woods*, 825 F.2d, 90, 93 (5th Cir. 1987)).

But courts apply a "more exacting standard" to claims brought after the confirmation of the bankruptcy plan, such as the ones at issue here. *See In re TXS United Housing Program, Inc.*, No. 14-34854-hdh11 (Bankr. N.D. Tex.), Dkt. No. 171 ("Order Confirming Debtor's Amended Plan of Reorganization" dated August 31, 2015).

In *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit suggested that a claim brought post-confirmation relates to the bankruptcy case where it "pertains to the implementation or execution of the [bankruptcy] plan."

In that case, the Court of Appeals found that a breach of contract action – which was filed in the bankruptcy court 18 months after it approved the reorganization plan – did not "'pertain[] to the implementation or execution of the plan.'" *In re Enron Corp. Securities*, 535 F.3d 325, 335 (5th Cir. 2008) (quoting *Craig's Stores*, 266 F.3d at 391). The Court of Appeals provided three rationales, which courts refer to as the "Craig

Factors." *Id.* "[F]irst, the claims at issue 'principally dealt with post-confirmation relations between the parties;' second, '[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;' and third, 'no facts or law deriving from the reorganization or the plan [were] necessary to the claim.'" *Id.* (quoting *Craig's Stores*, 266 F.3d at 391).

The Court of Appeals has since clarified that – notwithstanding its broad statement in *Craig's Stores* that a new claim may be "related to" a bankruptcy case when it "pertains to the implementation or execution of the [bankruptcy] plan" – "the facts in *Craig's Stores* were narrow." *Id.* "[T]hey involved post-confirmation claims based on post-confirmation activities." *Id.*; *accord Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169, 178 (W.D. Tex. 2014) ("Although the holding of *Craig's Stores* – that bankruptcy jurisdiction exists after plan confirmation only 'for matters pertaining to the implementation or execution of the plan' – was somewhat broad, the facts that precipitated that holding were narrow, involving post-confirmation claims based on post-confirmation activities.").

Courts in this circuit have subsequently found that a claim that arises post-confirmation is still related to the bankruptcy case if it involves pre-confirmation activities. *See Brickley*, 566 B.R. at 830 (citing *Colvin*, 507 B.R. at 179 for this proposition).

These cases discuss the phrase "related to" in the context of 28 U.S.C. § 157(b) and not in the context of Miscellaneous Order No. 33. But they nevertheless apply

here. The relevant provisions of Miscellaneous Order No. 33 tracks the language in 28 U.S.C. § 157(b). *Cf. IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (explaining that "the normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning").

TX United appears to argue that its claims relate to the bankruptcy case because they did not accrue until after the Bankruptcy Court confirmed the Bankruptcy Plan ("post-confirmation"). *See* Dkt. No. 10 at 2 (TX United disputing that it is attempting to attack the Bankruptcy Court's rulings and, instead, contending that "the Orders by the Bankruptcy Court are ... evidence of the discriminatory conduct alleged by the Plaintiff against the Defendants"). TX United has some support for this position. Each of TX United's claims is based on Defendants' right to foreclose on the Properties, and these foreclosures did not occur until after the Bankruptcy Court confirmed the Bankruptcy Plan. In other words, at least some of the facts and evidence supporting TX United's claims occurred post-confirmation.

But the fact that the claims arose post-confirmation does necessarily not mean that they are unrelated to the bankruptcy case. Courts have found that claims that arise post-confirmation nevertheless relate to the bankruptcy case when they involve pre-confirmation activities. *See Brickley*, 566 B.R. at 830 (citing *Colvin*, 507 B.R. at 179 for this proposition); *Enron Corp.*, 535 F.3d at 535 ("[T]he facts in *Craig's Stores* were narrow; they involved post-confirmation claims based on post-confirmation activities.").

For instance, in *Colvin v. Amegy Mortg. Co., L.L.C.*, a court in this circuit found that an avoidance claim – which the debtor brought to "avoid [the defendant's] lien and

-10-

prior foreclosure sale on [the property in question]" – concerned the parties' pre-confirmation relations even though it arose post-confirmation. *Colvin*, 507 B.R. at 174. The court reasoned that the debtor's bankruptcy plan addressed the creditor's right to foreclose and, as a result, the avoidance claim sought "to circumvent the earlier, pre-confirmation, agreed-to ability to foreclose." *Id.* at 178-79. As a different judge in that district explains, a claim relates to a bankruptcy case when it concerns "activities that led to the actual bankruptcy itself." *Brickley*, 566 B.R. at 830 (citing *Colvin*, 507 B.R. at 179).

The facts in this case largely mirror the facts in *Colvin*. TX United's claims arose out of a foreclosure that occurred post-confirmation. But their claims largely relate to debts that led to the bankruptcy and that, as a result, were addressed in the Bankruptcy Plan.

The Bankruptcy Plan explains that TX United had accumulated debts against the Creditor Defendants on their respective Notes. It consequently provides that, if these debts remained unpaid, the Creditor Defendants could enforce the rights and remedies afforded to them under their respective "Note[s], Deed[s] of Trust, liens, security interests and guarantees created prior to this bankruptcy being filed ... including but not limited to foreclosing on [the Properties]." Bankruptcy Case, Dkt. No. 171 at 22, 25, 27. The Creditor Defendants entered a Notice of Default shortly thereafter. And the Bankruptcy Court – acting on its duty to enforce and implement the Bankruptcy Plan – acknowledged that "[a] foreclosure on the properties the week of September 5, 2016 would hurt the interests of the other creditors in this bankruptcy"

and nevertheless allowed the foreclosure sale to proceed if the Creditor Defendants' debts remained unpaid. Bankruptcy Case, Dkt. No. 274 at 1-3.

This case therefore concerns the pre-confirmation activities of the parties.

And, as might be expected of such a case, it satisfies each of the Craig Factors. *See Enron Corp.*, 535 F.3d at 335 (referring to the Craig Factors as: (1) whether the claims deal with pre- or post-confirmation relations between the parties, (2) whether there is antagonism or a claim pending between the parties as of the date of the plan confirmation, and (3) whether facts or law deriving from the bankruptcy plan are necessary to the claim). TX United accrued the debts in question before the Bankruptcy Court confirmed the Bankruptcy Plan ("Pre-Confirmation") (Factor No. 1). The parties' dispute concerning these debts predates the Bankruptcy Plan (Factor No. 2). And the debts and the power to foreclose that are the subject of this suit are, indeed, also the subject of the Bankruptcy Plan and its execution and administration (Factor No. 3).

In short, the Court would ordinarily refer TX United's claims to the Bankruptcy Court under Miscellaneous Order No. 33 as a "related case."

II.    The Court is unlikely to withdraw the proceeding if it is referred – at least at this time.

TX United argues that – even assuming that the Court would ordinarily refer the case to the Bankruptcy Court – the Court should not do so here because the Court would ultimately withdraw that reference under 28 U.S.C. § 157(d). *See* Dkt. No. 10 at 2 -3. The undersigned agrees that, if the Court were likely to withdraw its reference to the Bankruptcy Court shortly after making the referral, the Court should deny the

motion to refer. But the undersigned concludes that the Court would likely not withdraw the reference under either the mandatory or permissive withdrawal provisions of 28 U.S.C. § 157(d), at least at this time.

> A.    28 U.S.C. § 157(d)'s mandatory withdrawal provisions are inapplicable to this proceeding.

TX United argues that, if the Court refers this suit to the Bankruptcy Court, it will successfully move to withdraw the reference from the Bankruptcy Court and transfer the case back to the district court under the mandatory withdrawal provisions under 28 U.S.C. § 157(d).

Section 157(d) provides, in pertinent part, that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

The requirement that a party timely move to withdraw can presumably be satisfied since the Court has yet to refer this case to the Bankruptcy Court and TX United has made its intention to move for a mandatory withdrawal clear. *See* Dkt. No. 10 at 2 (TX United stating that "[i]f removed to bankruptcy court, [it] will seek to withdraw the proceedings from said court" (emphasis omitted)).

The only remaining question, then, is whether TX United's claims require "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

-13-

"[T]he ambiguity of the term 'consideration' has generated [multiple] standards of review," *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 347 (S.D. Tex. 2009) (citations omitted) – both as to what constitutes "consideration of" title 11 and as to what constitutes "consideration of ... other laws of the United States regulating organizations or activities affecting interstate commerce."

A few district courts outside this circuit take "a broad, literal interpretation of § 157(d) that would require withdrawal anytime a non-bankruptcy federal law is involved and a party requests withdrawal." *See id.* at 348 (citing *In re Kiefer*, 276 B.R. 196, 199-200 (E.D. Mich. 2009); *Martin v. Friedman*, 133 B.R. 609, 612 (N.D. Ohio 1991)).

But most courts have construed "consideration," as used in 28 U.S.C. § 157(d), to mean "substantial and material consideration" – at least as to the requirement that the claim necessitate "consideration of ... other laws of the United States regulating organizations or activities affecting interstate commerce." *See In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (collecting cases); *see also Rodriguez*, 421 B.R. at 347 (noting that "[e]ach district court in the Fifth Circuit that has considered the issue ... has adopted the 'material and substantial consideration' test").

These courts reason "that permitting withdrawal when any non-bankruptcy federal question is implicated, even in a minor way, ... would 'encourage delaying tactics (perhaps further draining the resources of the debtor), forum shopping, and generally unnecessary litigation.' This could not have been the intent of Congress in

-14-

establishing § 157." *Rodriguez*, 421 B.R. at 347 (quoting *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996)).

The undersigned agrees with the position taken by most courts – including "[e]ach district court in the Fifth Circuit that has considered this issue." *Id.* (citing *Levine v. M & A Custom Home Builder & Developer*, 400 B.R. 200, 203 (S.D. Tex. 2008); *Harris v. Washington Mutual Home Loans, Inc.*, 312 B.R. 591, 595 (N.D. Miss. 2004); *Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993)); *see also National Gypsum*, 145 B.R. at 541 (a judge in this district also applying the majority rule).

The Court should construe "consideration," as used in 28 U.S.C. § 157(d), to mean "substantial and material consideration" – at least as to what constitutes consideration of non-title 11 federal law. Consideration is "substantial and material" where "'the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law'" – "rather than the mere application of well-settled law," *id.* (quoting *Vicars Ins. Agency*, 96 F.3d at 953-954 (in turn, citing *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2nd Cir. 1991)).

TX United contends that the Court is required to consider "other laws of the United States regulating organizations or activities affecting interstate commerce" to resolve their claims – namely the Fair Housing Act, 42 U.S.C. §§ 3604-05. The FHA "generally prohibits discrimination in the sale or rental of housing," *Avalon Residential Care Homes, Inc. v. GE Financial Assur. Co.*, No. 3:02-cv-631-L, 2002 WL 32359947,

-15-

at *2 (N.D. Tex. Oct. 18, 2002), and has been found to implicate interstate commerce, *see Seniors Civil Liberties Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1034 (11th Cir. 1992).

TX United specifically alleges that its clientele are members of a protected class and that Defendants violated one or more provisions of the Fair Housing Act by "put[ting] forth policy and procedures which are discriminatory in nature so that [TX United] would default on [its] contractual obligations." *See* Dkt. No. 1 at 6. In other words, TX United alleges that Defendants intentionally discriminated against it due to the identities of its clients.

TX United has failed to identify any unsettled questions of law that the Court would be forced to consider to evaluate this claim. Not does it appear that it can.

On their motion to dismiss, Defendants appear to challenge TX United's FHA claim on two grounds. They contend that TX United does not have standing to bring this claim because the FHA only applies to residences and not commercial properties, and the Properties at issue here are purportedly commercial. *See* Dkt. No. 9 at 7-8. And they contend that TX United does not have associational standing because "[i]n order to have associational standing, [the plaintiff] must establish ... that its members would have standing to sue in their own right'" and TX United "has no members, and thus no associational standing." *Id.* at 8 (quoting *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 243 (5th Cir. 1994)).

The principle that the FHA applies to residences, rather than commercial

properties, is well-settled. *See Weingarten Realty Investors v. Albertson's Inc.*, 66 F. Supp. 2d 825, 849 (S.D. Tex. 1999) ("[O]n its face, the Fair Housing Act extends only to dwellings, *i.e.*, residential property, not to commercial real estate.").

The principle that an entity does not have associational standing unless "its members would have standing to sue in their own right" is also well-settled. *See Ass'n for Retarded Citizens*, 19 F.3d at 244 (finding that "Advocacy, Inc. Fails to establish [this] first prong of this inquiry because Matt W. Is not a 'member' of Advocacy, Inc. The organization bears no relationship to traditional membership groups because most of its 'clients' – handicapped and disabled people – are unable to participate in and guide the organization's efforts.").

To decide Defendants' Motion to Dismiss, the only remaining question for the Bankruptcy Court, then, would be whether these well-settled principles apply to the facts in this case.

There is also no other indication that TX United's FHA claim will require anything beyond the application of well-settled law.

It is well settled that "plaintiffs suing under the Fair Housing Act may establish liability by showing intentional discrimination." *See Dews v. Town of Sunnyvale, Tex.*, 109 F. Supp. 2d 526, 530 (N.D. Tex. 2000) (citing *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996)).

And, as stated, TX United has not identified how resolution of its FHA claim (or other claims) requires any determination of unsettled law. *See In re Rosales*, No. 13-cv-

-17-

1316-LHK, 2013 WL 5962007, at *4 (N.D. Cal. Nov. 7, 2013) (finding that the moving party failed to meet its burden to show that the district court was required to withdraw its reference where it failed to provide any "analysis of why Plaintiffs' FHA claim raises novel issues that will require substantial interpretation").

Even if TX United's claims did require consideration of unsettled, non-title 11 federal law, TX United still might not be entitled to a mandatory withdrawal because its claim may not require consideration of title 11.

Courts also disagree as to what it means to require "consideration of title 11" under 28 U.S.C. § 157(d) – even among courts that agree that Section 157(d) requires "material and substantial consideration" of non-title 11 federal law. *See In re American Freight System, Inc.*, 150 B.R. 790, 793 (D. Kansas 1993) (discussing this court split).

"Several districts" have noted that, as written, Section 157(d)'s mandatory withdrawal provisions require "consideration of both title 11 and other laws of the United States regulating organizations or affecting interstate commerce." 28 U.S.C. § 157(d). They have consequently adopted the "minority view of requiring also a substantial and material consideration of title 11." *Id.* (citing *Brizendine v. Montgomery Ward & Co., Inc.*, 143 B.R. 877, 878-79 (N.D. Ill. 1992); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207, 209 (W.D.N.C. 1990), among others). Under this view, "if the proceeding can be resolved with only routine consideration of the Bankruptcy Code issues, then withdrawal is not mandatory." *Id.*

Other courts have held that – despite the use of the words "both" and "and"

("both title 11 ... and other laws") – "the substantial and material consideration of a title 11 issue is not a prerequisite to mandatory withdrawal." *In re American Freight System, Inc.*, 150 B.R. 790, 793 (D. Kansas 1993) (citing *In re St. Mary Hosp.*, 115 B.R. 495, 497 (E.D. Pa. 1990); *In re Isonosphere Clubs, Inc.*, 142 B.R. 645, 647 (S.D.N.Y. 1992); *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 127-28 (M.D.N.C. 1991), among others). The United States Court of Appeals for the Seventh Circuit, raising though not deciding the issue, explains that "whatever one considers the rationale for the mandatory withdrawal provision to be – constitutional concerns, legislative preferences, expertise of the respective courts, etc. – it would be somewhat anomalous to require withdrawal of a proceeding that contains, say, both title 11 and complex antitrust interpretation issues, but leaves to the bankruptcy court those cases that require complex analysis of the antitrust statutes alone." *See Vicars Ins. Agency*, 96 F.3d at 952-53.

But this Court need not weigh in on this dispute at this time. The mandatory withdrawal provisions would not apply regardless because, as noted above, TX United's claims do not require consideration of non-title 11 federal law.

     B.    28 U.S.C. § 157(d)'s permissive withdrawal provisions are inapplicable to this proceeding.

28 U.S.C. § 157(d)'s permissive withdrawal provisions allow a district court to withdraw a case that it would typically refer to the bankruptcy court, on its own motion or on timely motion, "for cause shown." In *Holland America Ins. Co. v. Succession of Roy*, the United States Court of Appeals for the Fifth Circuit has

explained that courts are to make this determination based on a list of non-exhaustive factors. *Miller*, 2003 WL 23109906 at *4 (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985)).  These include: (1) whether the proceedings are "core" proceedings; (2) the effect of the withdrawal on judicial efficiency; (3) uniformity in bankruptcy administration; (4) reduction in forum shopping; (5) fostering the economical use of the debtors' and creditors' resources; (6) expediting of the bankruptcy process; and (7) whether or not there is a jury demand. *Id.* (citing *Holland America*, 777 F.2d at 998).

TX United does not appear to argue that the Court has cause to withdraw the motion for any of the considerations the Court of Appeals referenced in *Holland America.* Nor does it appear that it can.

First, while there is limited briefing as to this issue, several, if not all, of TX United's claims appear to constitute core proceedings that the Bankruptcy Court is well-positioned to decide.

28 U.S.C. § 157(b)(2) provides a non-exhaustive list of matters which are "core." This list includes "counterclaims by the estate against persons filing claims against the estate," and "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship,'" among other types of proceedings. *See id.* § 157(b)(2)(C).

Both of these provisions appear to apply on the facts of this case. Here, the Bankruptcy Court was charged with reorganizing TX United's debts to the Creditor

Defendants, among other debts, and ultimately determined that the Creditor Defendants could proceed with a foreclosure under certain conditions. TX United now brings these claims largely to challenge Defendants' right to foreclose on the same properties at issue in the bankruptcy.

Since the Bankruptcy Case concerns the same right to foreclosure on the same properties, most, if not all of, TX United's claims in this suit constitute counterclaims against a "person[] [who has] fil[ed] claims against the estate," and therefore constitute core proceedings. *See Matter of Baudoin*, 981 F.2d 736, 741 (5th Cir. Jan. 6, 1993) (finding that such a suit constitutes a "counterclaim[] by the estate against persons filing claims against the estate" under 28 U.S.C. § 157(b)(2)(C) and is therefore a core proceeding); *accord Huntsville Chrysler v. General Elec. Capital Corp.*, No. 99-20202, 2000 WL 122470, at *2 (5th Cir. Jan. 11, 2000) ("because the dealerships lender liability claims were challenges to a claim made against the estate during the bankruptcy proceeding, these lender liability claims were core proceedings for which the bankruptcy court did have jurisdiction.").

Most, if not all of TX United's claims, also constitute core proceedings because – by challenging the Creditor Defendants' rights to Properties that the Bankruptcy Court stated that Defendants could foreclose upon – the claims may "'affect[] the liquidation of assets or the adjustment of the debtor-creditor ... relationship' tremendously." *Baudoin*, 981 F.2d at 742 (quoting 28 U.S.C. § 157(b)(2)(O)); *see also In re Branding Iron Motel*, 798 F.2d 396, 399 n.3 (10th Cir. 1986) (noting that a

-21-

controversy over a note and mortgage is 'inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets' and is, therefore, core).

Second, withdrawing the reference does not appear to serve judicial efficiency (Factor No. 2), create uniformity in bankruptcy administration (Factor No. 3), foster the economical use of the debtors' and creditors' resources (Factor No. 5), or expedite the administration of the bankruptcy plan (Factor No. 6).

The Bankruptcy Court is in a better position to efficiently decide this case in light of the nature of Defendants' arguments on their motion to dismiss. Defendants specifically argue that TX United's claims should be dismissed because they have already been resolved in the Bankruptcy Case. And Judge Hale, who presides over the Bankruptcy Case, "is in the best position to interpret and determine the effect of his Orders and rulings in the Bankruptcy Case," Dkt. No. 7 at 8. Further, referring this case to the Bankruptcy Court "would streamline disposition of both this case" and the administration of the Bankruptcy Plan "by bringing all matters related to the debtor and his assets into a single forum." *See Eggers v. TVZ Records, LLC et al.*, No. A-08-CA-668-SS, 2010 WL 11506652, at *2 (W.D. Tex. Jan. 22, 2010).

Third, TX United's demand for a jury trial (Factor No. 7) – over which the bankruptcy court could not preside – does not weigh toward withdrawing the referral either, at least at this time. Bankruptcy courts lack the statutory authority to conduct jury trials. *See In re Clay*, 35 F.3d 190, 197-98 (5th Cir. 1994) (agreeing with the Fourth, Sixth, Seventh, Eight, and Tenth Circuits in finding that bankruptcy courts lack the statutory authority to conduct jury trials). But, as another court in this circuit

-22-

has explained, "it is not apparent that a jury trial of these claims will be required," and courts generally do not withdraw a reference on this basis "until it is readily apparent that [the plaintiff's] jury trial rights are jeopardized." *In re Efficient Solutions, Inc.*, No. Civ. A. 00-3071, 2000 WL 1876356, at *7 (E.D. La. Dec. 20, 2000) (citing *Matter of Lieb*, 915 F.2d 180, 185 (5th Cir. 1990); *accord Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D. Tex. 1995)). "If and when the threat to [TX United's] Seventh Amendment Rights becomes concrete, ... [it] may seek appropriate remedies at that time." *Matter of Lieb*, 915 F. 2d 180, 185 (5th Cir. 1990).

Finally – although not listed as a consideration in *Holland America* – TX United appears to argue that the Court would have cause to withdraw any reference to the bankruptcy court in light of an unidentified motion for relief of stay that Defendants purportedly filed in the Bankruptcy Court. *See* Bankruptcy Case, Dkt. No. 57.

TX United contends that, by filing a motion for relief of stay, "Defendants by their own efforts took the actions necessary in order to be outside [the] protections" of the Bankruptcy Code and should therefore "not be allowed to invoke the Bankruptcy Court and the protections allowed under the Bankruptcy Code in order to ward off this suit." Dkt. No. 10 at 3.

TX United appears to misconstrue the purpose of a motion for relief from stay and the authority the Bankruptcy Code provides to creditors to seek one. "After a bankruptcy petition is filed, an automatic stay arises in favor of the debtor. The stay prohibits 'all entities' from making collection efforts against the debtor or the property

-23-

of the debtor's estate." *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008) (quoting 11 U.S.C. § 362(a)). But, under certain circumstances, the Bankruptcy Court empowers courts to lift the stay should a creditor file a motion seeking relief from that stay. *See* 11 U.S.C. § 362(d) (providing exceptions to the stay).

A creditor's decision to seek relief of stay, therefore, does not constitute a rejection of the Bankruptcy Court's jurisdiction or the Bankruptcy Code.

To the contrary, Defendants were able to successfully file a motion for relief of stay precisely because the Bankruptcy Code empowers them to do so. 11 U.S.C. § 362(d) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... (2) with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." *Id.* The decision to allow certain creditors to collect on debts – even after a debtor has filed for bankruptcy – reflects a policy interest in making sure these debts are paid.

It would be absurd to prohibit creditors from enjoying the advantages of the bankruptcy courts for (successfully) exercising powers that the Bankruptcy Code provides to them. *Cf. Carter v. H2R Holdings, LLC, et al.*, No. 3:16-cv-1554-N-BN, 2017 WL 2779838, at *4 (N.D. Tex. May 30, 2017), *adopted in full*, 2017 WL 2773684 (N.D. Tex. June 26, 2017) (concluding that the plaintiff should not be sanctioned for filing a meritless motion for leave to amend after the deadline provided in the Amended

-24-

Scheduling Order since "Federal Rule of Civil Procedure 16(b) actually contemplates that litigants may attempt to do so and provides a framework by which the Court can grant such requests").

In short, TX United has not and likely cannot establish cause for the Court to decline to refer this case to the Bankruptcy Court under Miscellaneous Order No. 33.

## Recommendation

For the reasons discussed above, the Court should grant Defendants' Motion to Refer Case to Bankruptcy Court [Dkt. No. 7] and refer this case to the Bankruptcy Court of the Northern District of Texas, including Defendants' Motion to Dismiss Claims Under Rule 12(b) [Dkt. No. 9], as a case related to *In re TXS United Housing Program, Inc.*, No. 14-34854-hdh11 (Bankr. N.D. Tex.).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATE: July 18, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE